<u>**IN THE UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE MIDDLE DISTRICT OF ALABAMA**</u>
<u>**EASTERN DIVISION**</u>

**SAMUEL J. LEWIS,**        \*
                                  \*
       **Plaintiff**         \*
                                    \*
                                    \*     **Case No.: 3:07-CV-787-WKW(W0)**
                                    \*
**CHIEF ADAM MELTON,**        \*
                                    \*
       **Defendant.**       \*

<u>**SPECIAL REPORT IN COMPLIANCE WITH COURT ORDER**</u>
<u>**ENTERED ON SEPTEMBER 6, 2007**</u>

       The undersigned would respectfully request that this Court accept this report as compliance with the Court's Order entered on September 6, 2007, and as a response from the Defendant named in the above styled cause of action, being Roanoke Police Chief Adam Melton. The undersigned would also respectfully assert that the Defendant is in no way waiving any defenses available to him, or which may become applicable.

I.      Facts.

          A.      The following facts are based on the Affidavit testimony presented by Roanoke Police Chief Adam Melton and Roanoke Police Captain Donnie Wayne Grant, Sr. involving the incarceration of Samuel J. Lewis in the Roanoke City Jail which led to the alleged incident for all relevant purposes herein. Said Affidavits are attached hereto and adopted herein by reference. On June 24, 2007, Roanoke Police Officers arrested Samuel J. Lewis on multiple accounts including, reckless endangerment, resisting arrest, attempting to elude police and was issued several citations for traffic violations he committed in the process. Mr. Lewis was also served with a F.T.P.

warrant for receiving stolen property.  He was booked in and set up on bonds for all the charges listed above totaling $1,500.00.  Mr. Lewis was charged with all the above counts because he ran from the police (using a motor vehicle) when they attempted to serve the warrant for receiving stolen property and a high speed chase ensued.  (See Alabama Uniform Arrest Report attached to Affidavit of Chief Adam Melton.)    At trial, the Court sentenced Mr. Samuel J. Lewis to a 210 Day Consecutive Sentence, including fines of $2,857.90 and costs of $1,186.00, and 425 hours of Community Service.  (See Roanoke Police Department Inmate Booking Report attached to Affidavit of Chief Adam Melton.)  Mr. Samuel J. Lewis is a Post Trial Convictee who is currently serving a 210 day Consecutive Sentence in the Roanoke City Jail.  Mr. Lewis also has a pending warrant for his arrest in Georgia. Mr. Lewis was not allowed by Chief Adam Melton to serve on a work detail outside the Jail, because, based on actions of Mr. Lewis involved in his arrest (running from police - involved in high speed chase), and based on warrants for his arrest from Georgia, Chief Adam Melton believes him to be a flight risk.  When Mr. Lewis was informed  that he was not allowed to go on a work detail, Mr. Lewis told Captain Donnie Wayne Grant, Sr. that if Chief Adam Melton would allow him to go out and work he would not sue, but if Chief Adam Melton did not he was going to send a letter to Montgomery and file a lawsuit.  Captain Grant told Chief Adam Melton what Samuel J. Lewis said.  Chief Adam Melton told Captain Grant that he was not going to have an inmate blackmail him or the City of Roanoke.  Further, Chief Adam Melton did tell Captain Grant to advise Mr. Lewis that he was still not going to be allowed to work for two weeks, not because he sued, but because of his attempt to

blackmail the City of Roanoke. Mr. Lewis was never denied access to any Court. As part of Chief Adam Melton's Affidavit we have attached copies of pertinent records maintained by the City of Roanoke, including Samuel J. Lewis's Uniform Arrest Report, Inmate Booking Report, Inmate Visitation Log, and Inmate Security and Medical Screening which are a part of the Plaintiff's Roanoke City Jail Prisoner Record for his incarceration made the basis of this suit, pertinent portions of the Roanoke Police Department's Standard Operating Procedures Manual and a copy of Arrest Warrant from Georgia.

B.    Given that the Defendant denies that he violated any Constitutional Right of the Plaintiff whatsoever, and denies that he treated the Plaintiff unfairly, the undersigned is unaware of any action which should be taken at this time by prison officials to resolve the subject matter of the Complaint.

C.    The undersigned is unaware of any similar complaints, whether pending in this Court or elsewhere, which should be considered together with the Complaint filed in the above styled cause of action.

II.    The sworn statements of the City of Roanoke Police Chief and the Captain of the Roanoke Police Department who were involved in this particular alleged incident made the subject of the Plaintiff's Complaint and while Mr. Samuel J. Lewis has been incarceration at the Roanoke City, being Chief Adam Melton (Exhibit 1) and Captain Donnie Wayne Grant, Sr. (Exhibit 2) are enclosed, all of whom have personal knowledge of the incident made the basis of the Plaintiff's Complaint.

While it is difficult to determine, from a reading of the Plaintiff's Complaint, exactly what Constitutional violations he is alleging occurred, it appears to the undersigned the Plaintiff is claiming

that he was subjected to unfair treatment while in the City Jail and/or retaliation.  Given that the Plaintiff was actually a POST TRIAL CONVICTEE for all purposes herein, the undersigned can only assume that the Plaintiff is making his claims under the Eighth Amendment. The Defendants respectfully assert that in no way was the Plaintiff being denied any constitutional right or punished with regard to the incident made the basis of the Plaintiff's Complaint.  **Outside Work Detail is a privilege of a Post Trial Convict, not a right.**  It was not punishment to Samuel J. Lewis to not allow Mr. Lewis to work on the work details outside the Jail walls, but instead was a protection to the citizens of Alabama.  Based on the events which led to his arrest and based on the pending Arrest Warrant from Georgia, Mr. Lewis has been viewed as a flight risk, and thus no work detail was allowed.  He was still allowed to work inside the walls of the jail.  Further, because Mr. Lewis attempted to threaten and blackmail Chief Adam Melton, Chief Melton could not give into Mr. Lewis' demands.   It is the contention of the Defendant that the Plaintiff attempted to blackmail and threaten the Defendant, and he is certainly, at least, guilty of provocation..

The undersigned has filed an Answer on behalf of the Defendant, Chief Adam Melton, setting out numerous defenses which may become applicable should this matter proceed further.   The Defendant respectfully sets forth a denial that any unequal treatment or retaliation was directed by the Defendant toward the Plaintiff, and the undersigned respectfully points out again that Work Detail is a privilege of a Post Trial Convictee, not a right.  **The Plaintiff is a Post Trial Convictee, and not a Pre-Trial Detainee and therefore is not afforded certain rights to which Plaintiff claims.**

As part of the numerous defenses set out, it is asserted that qualified immunity and discretionary function immunity should be applied, and the Defendant should be released from the threat of liability and burden of litigation concerning the incident made the basis of the Plaintiff's Complaint.  In no way would it have been clear to a reasonable official (i.e. the Defendant) that not

allowing a Post Trial Convictee, who is considered a flight risk and who attempted to blackmail the Defendant, to leave the walls of the jail on supervised work detail into the community, would in fact be construed as a Constitutional violation. We assert the Plaintiff did not have a clearly established Constitutional Right concerning the incident made the basis of his Complaint, and there was no intent whatsoever to punish the Plaintiff. A reasonable official in the Defendant's circumstances, who was acting without any purpose to punish, could have believed, and should believe, that it was lawful to not allow a post trial convictee, who is considered a flight risk and who attempted to blackmail the Defendant, to work on a work detail outside the jail. **Any alleged action by the Defendant was made in a good faith effort to maintain and restore discipline in the City Jail**.

Mr. Samuel J. Lewis currently resides in Roanoke City Jail.

The undersigned stands ready to supply the Court with any additional information it may need as the investigation of the matter continues.

 /s/ C. David Stubbs
**C. David Stubbs       (ASB-7248-U83C)**
Attorney for Defendant,
Chief Adam Melton

**OF COUNSEL**:
STUBBS, SILLS & FRYE, P.C.
P.O. Box 2023
Anniston, Alabama 36202
Telephone: (256) 835-5050
Facsimile: (256) 835-0011
Email: david-ssf@cableone.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 12th day of October, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. The following people are not registered with the CM/ECF system and have been served via U.S. first class mail:

**Samuel J. Lewis**
ROANOKE CITY JAIL
30 West Point Street
Roanoke, AL 36274

   /s/ **C. David Stubbs**
*OF COUNSEL*



# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

**SAMUEL J. LEWIS,**           *

 *

    **Plaintiff**           *

 *

 *            **Case No.: 3:07-CV-787-WKW(W0)**

 *

**CHIEF ADAM MELTON,**           *

 *

    **Defendants.**           *

## AFFIDAVIT OF ROANOKE POLICE CHIEF ADAM MELTON

STATE OF ALABAMA      )
COUNTY OF RANDOLPH    )

      Before me, a notary public in and for the Calhoun County, State of Alabama, personally appeared Roanoke Police Chief Adam Melton, who is known to me, and being by me duly sworn, deposes and says:

      I am the Chief of Police employed by the City of Roanoke's Police Department. I am over the age of 19 years, and I am competent to make this affidavit, which is based upon my personal knowledge and Roanoke Police Department records.

      The Roanoke Police Department has standard operating procedures, policies, regulations and administrative orders in place dealing with the arrest of suspects, force, procedures and medical needs of inmates. Based on my review of the applicable incident/offense report and arrest report, as well as the jail records relating to Mr. Lewis, personal conversations with the Mr. Samuel Lewis and having had conversations with the officers working in the Jail, I have no reason to believe that any of the department's policies or rules were violated in any way by myself or by any officer working in the jail while Mr. Lewis has been incarcerated. I also have no reason to believe that Mr. Lewis has suffered from any unfair treatment or retaliation by myself or other officers while he has been incarcerated in the Roanoke City Jail. Work detail is a privilege for an inmate, not a right.

      Mr. Samuel J. Lewis is a Post Trial Convictee who is currently serving a 210 day Consecutive Sentence in the Roanoke City Jail. Mr. Lewis also has a pending warrant for his arrest in Georgia. Mr. Lewis was not allowed by me to serve on a work detail outside the Jail, because based on actions of Mr. Lewis involved in his arrest (running from police - involved in high speed chase), and based on warrants for his arrest from Georgia, I believe him to be a flight risk. When Mr. Lewis was informed that he was not allowed to go on a work detail, I am informed that Mr. Lewis told Captain Donnie Wayne Grant, Sr. that "If I would allow him to go out and work he would not sue, but if I did not he was going to send a letter to Montgomery and file a law suit."

I told Captain Grant that I was not going to have an inmate blackmail me. Further, I also did tell Captain Grant to advise Mr. Lewis that he was still not going to be allowed to work for two weeks, not because he sued, but because of his attempt to blackmail the City of Roanoke. Mr. Lewis was never denied access to any Court.

Exhibit "A" attached hereto is a true and correct copy of Samuel J. Lewis's Uniform Arrest Report, Inmate Booking Report, Inmate Visitation Log, and Inmate Security and Medical Screening which are a part of the Plaintiff's Roanoke City Jail Prisoner Record for his incarceration made the basis of this suit.

Exhibit "B" attached hereto is a true and correct copy of pertinent portions of the Roanoke Police Department's Standard Operating Procedures Manual.

Exhibit "C" attached hereto is a true and correct copy of Arrest Warrant from Georgia.

All of these records were kept in the ordinary course of the business of the City. I am one of the custodians of these records.

FURTHER AFFIANT SAITH NOT.

Adam Melton, Chief of Police,
Roanoke, Alabama

STATE OF ALABAMA                )
COUNTY OF CALHOUN            )

Before me, a notary public, in and for said county and state, personally appeared Adam Melton, and after being first duly sworn, did state that he has read the above and foregoing, and executed the same of his own free will and under oath.

Sworn to and subscribed this 10th day of October, 2007.

NOTARY PUBLIC
commission Expires: 1/24/2010

# ALABAMA UNIFORM ARREST REPORT

## OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| | Fingerprinted | R84 Completed |
|---|---|---|
| | ■ Yes | ■ Yes |
| | 2 No | 2 No |

**IDENTIFICATION**

| 1 ORI # | 2 AGENCY NAME | 3 CASE # | 4 SFX |
|---|---|---|---|
| AL0560100 | Roanoke Police Department | 07062416A | 1 |

| 5 LAST, FIRST, MIDDLE NAME | 6 ALIAS AKA |
|---|---|
| LEWIS, SAMUEL JOSEPH | |

| 7 SEX | 8 RACE | 9 HEIGHT | 10 WGT. | 11 EYE | 12 HAIR | 13 SKIN | SCARS, MARKS, TATOOS, AMPUTATIONS |
|---|---|---|---|---|---|---|---|
| ■ M 1 | W 3 | 6' 00" | 161 | BRN | BRN | LITE | Tattoo - LEFT ARM / CHEST |
| F 2 | ■ B 2 | | | | | | |

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) | 16 SSN | 17 DATE OF BIRTH | 18 AGE | 19 MISCELLANEOUS ID # |
|---|---|---|---|---|
| ROANOKE, Randolph, AL | 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 | 10/03/1976 | 30 | |

| 20 SID # | 21 FINGERPRINT CLASS | | | | | | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|
| | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 62123319 | AL |
| 24 FBI # | HENRY CLASS | | | | | | 26 IDENTIFICATION COMMENTS | |
| | NCIC CLASS | | | | | | | |

| 26 | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) | 28 RESIDENCE PHONE | 29 OCCUPATION (BE SPECIFIC) |
|---|---|---|---|
| ■ RESIDENT | 2170 MOODY BRIDGE ROAD, LaGrange, GA 36274 | (706) 837-0853 | CONSTRUTION |
| NON-RESIDENT | | | |

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) | 31 BUSINESS ADDRESS (STREET, CITY, STATE, | 32 BUSINESS PHONE |
|---|---|---|
| DAN RICK HOMES | LAGRANGE, GA | (770) 310-3279 |

**ARREST**

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) | 34 SECTOR # | 35 ARRESTED FOR YOUR JURISDICTION? |
|---|---|---|
| COUNTY ROAD 282, STANDING ROCK, AL | | YES ■ NO |
| | | IN STATE |
| | | 2 OUT STATE AGENCY  RANDOLPH COUNTY |

| 36 CONDITION OF ARRESTEE: | 37 RESIST ARREST? | 38 INJURIES? | 39 ARMED? | 40 DESCRIPTION OF WEAPON |
|---|---|---|---|---|
| 1 DRUNK  3 SOBER | YES 2 NO | 2 OFFICER | Y N | 1 HANDGUN  4 OTHER FIREARM |
| 2 DRINKING  4 DRUGS | | NONE  3 ARRESTEE | | 2 RIFLE  5 OTHER WEAPON |
| | | | | 3 SHOTGUN |

| 41 DATE OF ARREST M D Y | 42 TIME OF ARREST | 43 DAY OF ARREST | 44 TYPE ARREST | 45 ARRESTED BEFORE? |
|---|---|---|---|---|
| 06/24/2007 | 16:06 | 1 AM ■ MIL. | 1 ON VIEW | 1 YES  ■ NO |
| | | S M T W T F S | 2 ON CALL | 3 UNKNOWN |
| | | 1 2 3 4 5 6 7 | WARRANT | |

| 46 CHARGE - 1 FEL MISD | 47 UCR CODE | 48 CHARGE - 2 1 FEL ■ MISD | 49 UCR CODE |
|---|---|---|---|
| Alias Arr. / Bench Warrant(RECIEVING STOLEN | 5015 | RECKLESS ENDANGERMENT | 1314 |

| 50 STATE CODE/LOCAL ORDINANCE | 51 WARRANT # | 52 DATE ISSUED M D Y | 53 STATE CODE/LOCAL ORDINANCE | 54 WARRANT # | 55 DATE ISSUED M D Y |
|---|---|---|---|---|---|
| 13A-10-39 | CW04000369 | 11/01/2005 | 13A-6-24 | | |

| 56 CHARGE - 3 FEL ■ MISD | 57 UCR CODE | 58 CHARGE - 4 1 FEL 2 MISD | 59 UCR CODE |
|---|---|---|---|
| Resisting Arrest | 4801 | | |

| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT # | 62 DATE ISSUED M D Y | 63 STATE CODE/LOCAL ORDINANCE | 64 WARRANT # | 65 DATE ISSUED M D Y |
|---|---|---|---|---|---|
| 013A-10-0041 | | | | | |

| 66 ARREST DISPOSITION | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| HELD  4 TOT-LE | | |
| 2 BAIL  OTHER | | 68 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |
| 3 RELEASED | | |

**VEHICLE**

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|
| 1990 | TOYOTA | | 2 DO | TOP BLU - Blue  BOTTOM BLU - Blue | 14D618A | AL | 2007 |

| 78 VIN | 79 IMPOUNDED? | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|
| JT4RN81P7L5086787 | ■ YES 2 NO | WARDS - 1 |

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED |
|---|
| |

**JUVENILE**

| 82 JUVENILE DISPOSITION: | 83 RELEASED TO |
|---|---|
| 1 HANDLED AND RELEASED  2 REF. TO WELFARE AGENCY  3 REF. TO ADULT COURT | |
| 2 REF. TO JUVENILE COURT  4 REF. TO OTHER POLICE AGENCY | |

| 84 PARENT OR GUARDIAN (LAST, FIRST, MIDDLE, NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 87 PHONE |
|---|---|---|
| | | |

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE |
|---|---|---|---|
| | | | |

**RELEASE**

| 91 DATE AND TIME OF RELEASE M D Y | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID# |
|---|---|---|---|
| | 1 AM MIL. | | |
| | 2 PM | | |

| 95 RELEASED TO | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS |
|---|---|---|
| | | |

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE | 99 PROPETY NOT RELEASED/HELD AT: | 100 PROPERTY # |
|---|---|---|
| 1 YES  2 NO  3 PARTIAL | | |

| 101 REMARKS (NOTE ANY INJURIES AT TIME OF RELEASE) |
|---|
| |

EXHIBIT

A

| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER | LOCAL USE | STATE USE |
|---|---|---|---|
| | | | |

| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX |
|---|---|---|---|---|---|---|
| | | | | | | |

| 111 ARRESTING OFFICER (LAST, FIRST, M.) | 112 ID # | 113 ARRESTING OFFICER (LAST, FIRST, M.) | 114 ID # | 116 SUPERVISOR | 118 WATCH CMDR |
|---|---|---|---|---|---|
| LORENZO FOSTER | 1932 | MARK FARMER | 6262 | MARK FARMER  ID # 6262 | ID # |

TYPE OR PRINT IN BLACK INK ONLY

ACJIC-32 REV. 10-90

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| ADDITIONAL ARREST NARRATIVE CONTINUED | 117 DATE AND TIME OF ARREST<br>M  D  Y<br>06/24/2007   16:06 | ☐1 AM  ■ MIL.<br>☐2 PM | 118 CASE #<br>07062416A | 119 SFX<br>1 |
|---|---|---|---|---|
| | | | PAGE # 2 | |

**NARRATIVE**

ON 06/24/2007 WHILE PATROLLING COUNTY ROAD 87 AROUND MOORES QUICK STOP, I NOTICED A SUBJECT IN A
BLUE PICKUP TRUCK(TOYOTA) WE POSSIBLY HAD WARRANTS ON BY THE NAME OF JOSEPH LEWIS AND ONCE I PULLED
INTO MOORES TO MAKE A POSITIVE IDENTIFICATION , THIS SUBJECT WENT INSIDE THE STORE AND ONCE THE
FEMALE SUBJECT RIDING WITH HIM SAW MY PATROL CAR SHE IMMEDIATELY WENT INTO THE STORE TO WARN HIM
AND UPON HIM COMING OUT OF THE STORE, I ATTEMPTED TO APPROACH MR.LEWIS ,BUT WAS STOPPED BY THE
STORE OWNER OUT OF CONCERN THAT HE WAS ACTING VERY SUSPICIOUS AND ONCE SHE SPOKE TO ME, MR. LEWIS
JUMPED IN THE TRUCK AND ATTEMPTED TO LEAVE AND ONCE HE SAW ME GO TO MY PATROL CAR AND ACTIVATED MY
EMERGENCY LIGHTING SYSTEM, HE RAN THE STOP SIGN AT THE INTERSECTION OF COUNTY ROAD 16 AND 87 AND
CROSSED COUNTY ROAD 87 AT A HIGH RATE OF SPEED AND GOT BACK ONTO THE OTHER HALF OF COUNTY ROAD 16
TRAVELLING SOUTH, TRYING TO ELUDE ME AND WE MET SEVERAL VEHICLES THAT THIS SUBJECT RECKLESSLY RAN
OUT OF THE ROADWAY, AND UPON COMING UP AT THE INTERSECTION OF COUNTY ROAD 16 AND HWY. 22 THID
SUBJECT AGAIN RAN THE STOP SIGN AND CROSSED HWY. 22 AND ALMOST HIT SEVERAL CARS,MR. LEWIS THEN
CONTINUED TO TRAVELL ALL THE WAY OUT COUNTY ROAD 16 AND AT THE END OF COUNTY ROAD 16, AT THE
INTERSECTION OF COUNTY ROAD 16 AND LAGRANGE ROAD(DOWN TOWN STANDING ROCK), HE AGAIN RAN ANOTHER
STOP SIGN AND ALMOST CAUSED A MAJOR ACCIDENT,AND MADE A LEFT TURN AND  ENTERED ONTO LAGRANGE
HIGHWAY TRAVELLING EAST AND I WAS CALLED OFF OF THE CHASE AND WAS HEADED BACK TO ROANOKE AND MR.
LEWIS THEN TURNED AROUND AND GOT BACK ONTO COUNTY ROAD 16 AND HEADED BACK TO ROANOKE AND RAN INTO
OFFICERS AGAIN AND ATTEMPTED TO ELUDE OFFICERS AGAIN AND RAN SEVERAL MORE CARS OUT OF THE ROAD AND
ALSO A RANDOLPH COUNTY SHERIFF DEPUTY OUT OF THE ROADWAY AND ALMOST HITTING HIM HEAD ON,THE OTHER
OFFICERS ENDED THE CHASE AND ARRESTED MR. LEWIS ON COUNTY ROAD 282 IN CHAMBERS COUNTY AND
TRANSPORTED HIM BACK TO ROANOKE WITHOUT INCIDENT OR INJURIES AND MR. LEWIS WAS CHARGED WITH

**NARRATIVE**

RECKLESS ENDANGERMENT,RESISTING ARREST AND ATTEMPTING TO ELUDE POLICE AND ISSUED SEVERAL CITATIONS
FOR TRAFFIC VIOLATIONS HE COMMITED IN THE PROCESS, AND MR. LEWIS WAS ALSO SERVED WITH A
(F.T.P.)WARRANT FOR RECEIVING STOLEN PROPERTY AND BOOKED IN AND SET UP ON BONDS FOR ALL THE CHARGES
LISTED ABOVE TOTALLING ($1500.00) IN BONDS.

NOTE:

THIS SUBJECT WAS SET UP TO APPEAR IN COURT ON AUGUST 7TH,2007 AT 06:00 P.M. AT THE ROANOKE
JUSTICE CENTER AT 30 WESTPOINT STREET,ROANOKE.

**NARRATIVE**

2

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| **ADDITIONAL ARREST INFORMATION** | 117 DATE AND TIME OF ARREST<br>M    D    Y<br>06/24/2007    16:06 | ☐1 AM  ■ M/L<br>☒2 PM | 118 CASE #<br>07062416A | | 119 SFX<br>1 |
| | | | | PAGE # 3 | |

## Assisting Officer(s)

ASSISTING OFFICER
**8010 - GEORGE E. SHEARS**

3

# Roanoke Police Department
## Inmate Booking Report

| Case Number: 07062416A | Suffix: 1 | Booking Status: In Jail | Security Status: Minimum | Weekender? No | Release Code: | | OCA Number: |
|---|---|---|---|---|---|---|---|
| Date Of Arrest: 06/24/2007 | Time Of Arrest: 16:06 | Place Of Arrest: COUNTY ROAD 282 | | | Arresting Officer: 1932 - LORENZO FOSTER | | |

 

| Name: LEWIS, SAMUEL JOSEPH | | | | Date Of Birth: 10/03/1976 | Age: 30 | Race: W | Sex: M |
|---|---|---|---|---|---|---|---|
| Home Address: 2170 MOODY BRIDGE ROAD, LAGRANGE, GA 36274 | | | | Home Phone Number: (706) 837-0853 | Resident Status: R | Height: 6'00" | Weight: 161 |
| Hair Color: BRN | Eye Color: BRN | Skin: LITE | Social Security #: 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 | Driver's License #: 62123319 | DL State: AL | Property Location: | |
| Hold Inmate: No | Hold Information: | | | | | | |

## Booking/Release

| Booking Officer: 1932 - LORENZO FOSTER | | Releasing Officer: | |
|---|---|---|---|
| Booking Date: 06/24/2007 | Booking Time: 17:41 | Release Date: | Release Time: |

## Offense/Charge

| Offense: | Offense Type: | Warrant Number: | Bond Type: | Bond Amount: |
|---|---|---|---|---|
| 501501 - Alias Arr. / Bench Warrant(RECIEVING S | | CW04000369 | C - Cash | $500.00 |
| 131401 - RECKLESS ENDANGERMENT | M | | P - Property | $500.00 |
| 480101 - Resisting Arrest | M | | P - Property | $500.00 |

## Vehicle

| Year: 1990 | Make: TOYOTA | Model: | License Plate #: 14D618A | State: AL | Impounded: Y | Storage Location: WARDS |
|---|---|---|---|---|---|---|

## Booking Notes

SUBJECT WENT TO COURT ON 07/10/2007

MC - 04 - 000369    REC STOLEN PRO FTP OWES $507.90     HELD IN JAIL TILL PAID OR SERVED
TR - 07 - 000525    RECK / DRV        FINE $500.00 COST $101.00    100 HRS C/S 90 DAYS CONSECUTIVE SENTENCE
TR - 07 - 000526    ATE               FINE $500.00 COST $101.00    100 HRS. C/S 90 DAYS CONSECUTIVE SENTENCE
TR - 07 - 000527    RUN / STOP / SIGN    FINE $ 50.00 COST $101.00
TR - 07 - 000528    RUN / STOP / SIGN                DISMISSED PER PENNY HOLLOWAY 07/13/2007

4

# Roanoke Police Department
## Inmate Booking Report

| Case Number: | Suffix: | Booking Status: | Security Status: | Weekender? | Release Code: | OCA Number: |
|---|---|---|---|---|---|---|
| 07062416A | 1 | In Jail | Minimum | No | | |

| Date Of Arrest: | Time Of Arrest: | Place Of Arrest: | | Arresting Officer: |
|---|---|---|---|---|
| 06/24/2007 | 16:06 | COUNTY ROAD 282 | | 1932 - LORENZO FOSTER |

```
TR - 07 - 000529   DOWSR              FINE $  50.00  COST $101.00
TR - 07 - 000530   25 / SPEED LIMIT   FINE $  50.00  COST $101.00
TR - 07 - 000531   SWITCH TAG         FINE $  50.00  COST $101.00
TR - 07 - 000532   DWL                FINE $100.00   COST $151.00   25 HRS C/S
TR - 07 - 000533   NO PROOF INS       FINE $  50.00  COST $101.00
MC - 07 - 000209   RES ARREST              FINE $500.00  COST $164.00  100 HRS C/S   90 DAYS CONCURRENT SENTENCE
MC - 07 - 000210   RECKLESS ENDANG         FINE $500.00  COST $164.00  100 HRS C/S   30 DAYS CONSECUTIVE SENTENCE

        TOTALS      FINE = $2,857.90    COST = $1,186.00  425 HRS C/S  210 DAYS CONSECUTIVE SENTENCE
```

SUBJECT TAKEN TO ER / HOSPITAL ON TOOTH PROBLEM ON 08/31/2007 ( NO DENTIST IN ROANOKE AVAIABLE )
2 PRESCRIPTIONS AT WALMART TO BE FILLED AT COST TO CITY.  RESTITUTION DU CITY **** $35.28  ****

SUBJECT WAS COPLAINED ON BY FEDERAL COURT EMPLOYEES THAT HE WAS CALLING COLLECT HARASSING THEM AND
WANTED INMATE LEWIS TO STOP HARRISSING THEM. SUBJECT CONFRONTED ON COMPLAINT AND SUBJECT WAS
ARGUMENTED TOWARD CAPT. GRANT
AND ACTION TAKEN WAS TO REMOVE SUBJECT FROM CELL BLOCK WHERE HE COULDN'T MAKE PHONE CALLS TO
COMPLAINTANT
SUBJECT IS TO REMAIN IN ISOLATION CELL FOR 48 HOURS AND ON GOOD CONDUCT BE ALLOWED BACK IN OPEN CELL
BLOCK.

SUBJECT WAS ALSO GIVEN A LETTER FROM CHIEF THAT OUTLINES HIS ACTIONS ON SECURING MONIES FROM SUBJECT
PROPERY IN HOLDING
ALSO SUBJECT IS ONLY ALLOWED MONIES TO BE BROUGHT TO HIM AT JAIL ON MONDAY THROUGH FRIDAY IN WHICH
MONEY MUST BE RELEASED TO CHIEF OF POLICE. NO MONIES ARE TO BE RECEIVED ON WEEKENDS. WHEN OFFICE IS
CLOSED IN POLICE DEPARTMENT
THIS IS ORDERES OF CHIEF OF POLICE. ALL ACTIONS ON MATER OCCURED ON 09/07/2007.

SUBJECT ALLOWED BACK IN POPULATION ON 09/09/2007

-SUBWAS TAKEN TO DR. TOWERS ON 09/12/2007 AND HAD HIS TOOTH PULLED
MEDS FILLED AT WAL-MART   $20.56

SUBJECT TAKEN TO DR. TOWERS FOR TOOTH EXTRACTION ON 09/19/2007 @2:00 PM CST TO CITY $ 95.00
PRESCRIPTIONS FILLED @ WAL MART09/19/2007 AT COST TO CITY $ 20.56

SUBJECT TAKEN TO DR. TOWERS FOR TOOTH EXTRACTIONS ON 09/26/2007  COST TO CITY $ _____


TOTAL RESTITUTION ON MEDICINE @ WAL MART = $ 76.40

| DATE WORKED | LOCATION | TOTAL(S) WORK DAYS | OFFICER / OUT | OFFICER / IN | |
|---|---|---|---|---|---|
| 08/12/2007 | JAIL YARD | 1 | 142 | 142 | |
| Chief advised subject could not do any work for 3 weeks 08/13/2007 to 09/03/2007 | | | | | |
| 09/14/2007 | A BLOCK | 2 | 111 | 111 | ASSIGNED B BLOCK CLEAN UP |
| 09/15/2007 | A BLOCK | 3 | 142 | 142 | |
| 09/16/2007 | A BLOCK | 4 | 142 | 142 | |
| 09/17/2007 | A BLOCK | 5 | 111 | 111 | |
| 09/18/2007 | A BLOCK | 6 | 111 | 111 | |
| 09/19/2007 | A BLOCK | 7 | 111 | 111 | |
| 09/20/2007 | A BLOCK | 8 | 111 | 111 | |
| 09/21/2007 | a block | 9 | 111 | 111 | |
| 09/22/2007 | A BLOCK | 10 | 142 | 142 | |
| 09/23/2007 | A BLOCK | 11 | 142 | 142 | |
| 09/24/2007 | A BLOCK | 12 | 111 | 111 | |
| 09/25/2007 | A BLOCK | 13 | 111 | 111 | |

# Inmate Visitation Log

| Case Number: 07062416A | Suffix: 1 | Name: LEWIS, SAMUEL JOSEPH | | Date Of Birth: 10/03/1976 | Age: 30 | Race: W | Sex: M | Social Security #: 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 |
|---|---|---|---|---|---|---|---|---|

| Seq. #: | Date of Visit: | Time In: | Time Out: | Name: | Relationship: |
|---|---|---|---|---|---|
| 1 | 06/27/2007 | 9:21 | 9:41 | YOUNG, DOREEN | Mother |
| 2 | 06/27/2007 | 9:21 | 9:41 | TERRELL, APRIL | Girlfriend |
| 3 | 06/30/2007 | 10:50 | 11:00 | TERRELL, APRIL | Girlfriend |
| 4 | 07/04/2007 | 13:32 | 13:52 | TERRELL, APRIL | Girlfriend |
| 5 | 07/18/2007 | 13:10 | 13:30 | YOUNG, DOREEN | Mother |
| 6 | 07/21/2007 | 12:28 | 12:48 | TERRELL, APRIL | Fiancee |
| 7 | 08/05/2007 | 13:00 | 13:20 | TERRELL, APRIL | |
| 8 | 08/12/2007 | 13:10 | 13:20 | TERRELL, APRIL | |
| 9 | 09/02/2007 | 13:20 | 13:40 | LEWIS, APRIL | |
| 10 | 09/02/2007 | 13:40 | 14:00 | LEWIS, APRIL | |
| 11 | 09/05/2007 | 13:13 | 13:33 | YOUNG, DORENE | Mother |
| 12 | 09/22/2007 | 9:00 | 9:20 | LEWIS, APRIL | |

# Inmate Security Screening

| Case Number: | Suffix: | Name: | | Date Of Birth: | Age: | Race: | Sex: | Social Security #: |
|---|---|---|---|---|---|---|---|---|
| 07062416A | 1 | LEWIS, SAMUEL JOSEPH | | 10/03/1976 | 30 | W | M | 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 |

| Question: | Answer: | Explanation: |
|---|---|---|
| 1. Does the inmate's behavior suggest the risk of assault to staff or other inmates? | No | |
| 2. Does the inmate have a history of escapes? | No | |
| 3. Is the inmate's current offense a felony assault or a sexual felony? | No | |
| 4. Has the inmate ever had an assault or sexual felony conviction? | No | |
| 5. Has the inmate had 3 or more felony convictions? | No | |

Signature _____    Date _____

# Inmate Medical Screening

| Case Number: | Suffix: | Name: | Date Of Birth: | Age: | Race: | Sex: | Social Security #: |
|---|---|---|---|---|---|---|---|
| 07062416A | 1 | LEWIS, SAMUEL JOSEPH | 10/03/1976 | 30 | W | M | 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 |

| Question: | Answer: | Explanation: |
|---|---|---|
| 1. Is inmate unconscious? | No | |
| 2. Are you now or have you ever been under the care of a psychiatrist? | No | |
| 3. Obvious fever, swollen lymph nodes, jaundice or other evidence of infection that might spread throughout the jail? | No | |
| 4. Does inmate appear under the influence of alcohol or drugs? | No | |
| 5. Is the skin in good condition and free of vermin? | Yes | |
| 6. Is the inmate carrying medication? | No | |
| 7. Are you taking any medication? | No | |
| 8. Do you have a special diet? | No | |
| 9. Do you have any type of medical insurance? (If yes, what type, policy number) | No | |
| 10. Have you ever been treated for diabetes, heart disease, seizures, arthritis, allergies, asthma, ulcers, high blood pressure ,head injury, T.B., epilepsy, or hepatitis? | No | |
| 11. Are you allergic to any medication?  What? | No | |
| 12. If female, are you pregnant, taking birth control pills, or recently delivered a child? | No | |
| 13. Do you have HIV or any other sexually transmitted disease that you know of?  (If yes, what kind, and when was the last time you were tested?) | No | |

Signature _____     Date _____

# Inmate Suicide Screening

| Case Number: | Suffix: | Name: | Date Of Birth: | Age: | Race: | Sex: | Social Security #: |
|---|---|---|---|---|---|---|---|
| 07062416A | 1 | LEWIS, SAMUEL JOSEPH | 10/03/1976 | 30 | W | M | 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 |

| Question: | Answer: | Explanation: |
|---|---|---|
| 1. Arresting or transporting officer believes subject may be suicide risk?  (If YES, notify shift commander) | No | |
| 2. Lacks close family and friends in the community? | No | |
| 3. Experienced a significant loss within the last 6 months (loss of job, relationship, death of close family member)? | No | |
| 4. Worried about major problems other than legal situation (terminal illness)? | No | |
| 5. Family member or significant other has attempted or committed suicide (spouse, parent, sibling, close friend)? | No | |
| 6. Has psychiatric history (note current psychotropic medication and name of most recent treatment agency)? | No | |
| 7. Is thinking about killing self?  (If YES, notify shift commander) | No | |
| 8. Has previous suicide attempt (check wrists and note method)? | No | |
| 9. Shows signs of depression (crying, emotional flatness)? | No | |
| 10. Is acting and/or talking in a strange manner (cannot focus attention, hearing or seeing things that are not there)? | No | |

Signature _____    Date _____

# Inmate Medications

| Case Number: | Suffix: | Name: | | Date Of Birth: | Age: | Race: | Sex: | Social Security #: |
|---|---|---|---|---|---|---|---|---|
| 07062416A | 1 | LEWIS, SAMUEL JOSEPH | | 10/03/1976 | 30 | W | M | 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 |

| Seq. #: | Medication: | Dosage: | Frequency: |
|---|---|---|---|
| 1 | CEPHALEXIN 500 MG | 1 CAPSULE | EVERY 6 HRS. |
| Notes: | | | |

| Seq. #: | Medication: | Dosage: | Frequency: |
|---|---|---|---|
| 2 | | | |
| Notes: | | | |

| Seq. #: | Medication: | Dosage: | Frequency: |
|---|---|---|---|
| 3 | AMOXICILLIN | 1 CAPSULE | EVERY 6 HRS |
| Notes: | | | |

| Seq. #: | Medication: | Dosage: | Frequency: |
|---|---|---|---|
| 4 | LORCET PLUS | 1 TABLET BY MOUTH | EVERY 4 HRS |
| Notes: | | | |

10


EXHIBIT

B

# ROANOKE POLICE DEPARTMENT RULES AND REGULATIONS STANDARD OPERATING PROCEDURES

others deemed necessary on this decision. Every effort will be made to reach a mutual agreement on this recommendation prior to seeking a pickup order. However, this protocol recognizes that law enforcement may remove a child in an emergency situation.

DHR, the DA and law enforcement will recommend cases for the Multi-Disciplinary Team review as needed. The team may review all aspects of the case including child safety, treatment planning, prosecution, further investigation, and any other steps needed. The recommendations of the team in regard to case continuation or closure to team will be noted. Cases referred for prosecution will be tracked and final disposition reported to the Team. In cases where interviews took place without CAC participation. DHR will refer these cases to the CAC (for Multi-Disciplinary Team referral).

C. Therapy:

Therapy is available for victims and non-offending family members at the CAC and from other resources.

Team decisions will be made regarding those cases that do not fit under the Current Protocol and will be handled On Do case by case basis.

D. Prosecution:

The decision to prosecute or not is a decision made by the DA with input from the other team members, the victim and family members. RPD will work with the DA and other officials to prepare these cases for court.

## JAIL PROCEDURES, SECURITY AND PRISONER TREATMENT

General Jail Procedures:  All prisoners will be logged in and out of the Jail Log.  Personal property will be placed in a clear plastic bag and all information will be filled in on the bag.  The bag will then be secured in the inmate property room.

All prisoners will be printed and photographed as soon as possible after booking.
Two fingerprint cards should be made, one for our case file and one to be sent to Montgomery.
Anyone releasing a prisoner will assure that the prisoner has received all of his personal property.
The empty bag will then be placed in the booking file as a permanent record.

Visitors will be sign in and out in the visitor's section of the jail log.
Work release prisoners will be signed in and out in the work release section of the jail log.

Visits:

All visits shall be documented in the jail log.
The press is entitled only to the same visiting access as the public.

An attorney must be given reasonable right of access to his client and a private meeting place if requested. If requested, this should take place in the interrogation room.

All visits can be visually monitored, but you can't listen, tape, or eavesdrop on attorney visits.

All items brought by a visitor will be inspected and approved.

Visiting hours shall be Mon - Sat. 10:00am. - 4:00pm.

Each visitor shall stay no more than 20 minutes.

Visits will take place in the video visitation room and not in the cell area.

No food will be brought by visitors.

## ARTICLES ALLOWED IN CELLS

The following items will be allowed in the cell:

Soap, toothbrush, toothpaste, deodorant, (if not aerosol or in a glass container), Bible, Tampax or Kotex for women prisoners when necessary, three changes of underclothes upon the inmates inital entry into the jail, battery operated razor with only microscreens no cutting blades.

No other articles will be allowed.

There will be no smoking or smoking materials allowed in the cell area.

## CORRESPONDENCE

All U.S. Mail, both incoming and outgoing, may be inspected.

## MEDICAL CARE

Prisoners requesting emergency medical care should be taken to the family health care facility in Roanoke, Alabama and upon that being closed, to the Randolph Medical Center.

All doctor orders must be carried out and documented.

The dispensing of all medicines shall be documented in the Jail Log Book.

If an inmate desires treatment by a doctor or a dentist other than the one furnished by the City, they or their family must pay the bill. This includes charges for transporting the inmate to and from, plus any guard that must accompany him.

When an inmate is taken for medical treatment at any facility, they should not be placed into general population for at least 24 hours.

## PERSONAL HYGIENE

A.  All inmates must have three (3) showers a week, except when worked and then daily.

B.  Inmates must have sanitary drinking water.

C. All clothes should be washed at least every other day by the truatee

## RECREATION

A. Inmates should be allowed out of their cells for exercise at least once a day for a period of 30 minutes.

## TRUSTEE

Inmates can be awarded trustee statis. This decision will be determined by the Lieutenant. The trustee's duties will be assigned by the agency's needs at that time but the general duties are throughly cleaning all areas of the facility, washing clothes, preparing meals, washing cars, etc. If any problems arise with the trustees, their priviledge should be immediately revolked.

## INMATE SECURITY

Juveniles and female inmates shall be separated from other prisoners.

## PRISONERS PROPERTY

A. An accurate inventory of prisoner's property shall be kept.
B. Any contraband must be shown to the prisoners and a receipt given to them before that contraband is destroyed.

## TELEPHONE CALLS

A. Prisoners must have reasonable access to a telephone.

B. Four (4) hours is the maximum a prisoner can be held on a holding cell without a phone call without the Chief's approval.
C. All telephones will be turned off at the designated lights out time.

## HUMAN DIGNITY OF JAIL PRISONERS

Jail prisoners will be accorded basic human dignity at all times. They will not be harassed, coerced into taking any detrimental actions against themselves or any prisoner, ridiculed, struck or in any other way physically or mentally abused.

## FEEDING OF PRISONERS

Jail prisoners will be fed three meals a day, every day. The Chief of Police will approve the meals that will be given to the prisoners. These meals should be given at times that correspond to the accepted times that meals are eaten. The shift supervisor will determine who feeds the prisoners, but it will be the ultimate responsibility of the shift supervisor to make sure that the prisoners are fed.

## VISUAL CHECK OF PRISONERS

Jail prisoners will be checked visually and logged on a regular basis, by personal observation. This should be done at least once every ½ hour by either the police dispatcher or a police officer.

3

## VIOLENT OR MENTALLY DERANGER BEHAVIOR

Jail prisoners who have exhibited violent or mentally deranged behavior will be treated as firmly and fairly as possible. The handling of these types of prisoners should be done by police officers only. Police dispatchers are not trained to deal with violent or deranged prisoners and should not be placed into the position of having to. It will be up to the shift supervisor to calm and subdue such prisoners using every legal and humane means as possible. If all means fail prisoners will be taken to Randolph Medical Center. If for any reason Randolph Medical Center will not accept the prisoner, then efforts should be made to take the prisoner to another hospital.

## PUNISHMENT

Jail prisoners who misbehave or otherwise cause a disturbance will be punished by losing privileges, loss of reading materials, loss of telephone usage or loss of television usage. More serious misbehavior or disturbances may result in loss of visitation privileges. Under no circumstances will a prisioner lose the basic rights of being fed and bathed. If a prisoner is removed from the population and placed into isolation the prisioner will loose all priviledges for not less than 24 hours including visitation. All punishments must be approved by the Chief of Police or his assistant.

## WORK RELEASE

Work release can only be approved by the Chief of Police after certain conditions are met.

## JAIL SECURITY

A. Any time a prisoner leaves the jail area he will be searched thoroughly before being returned to jail.

B. An employee will be present during visiting hours and will closely supervise visitation.

C. All visitation will be conducted through video visitation. No visitation other than attorneys will be conducted by contact.

D. No food or drink will be allowed in the jail area unless it is furnished by the police department at meal time.

I. These rules will be in effect on week-ends as well as weekdays.

## ATTORNEYS

Recommending: Members of the Department shall not recommend or suggest to any person, arrested or any prisoner, or to any other person, the employment or hire of any person as an attorney or counsel, either directly or indirectly.

Visiting Prisoners:  Attorney, as legal counsel for prisoners, shall be permitted to visit prisoners at any hour and time of day in keeping with the rules and regulations governing jail or investigative procedure.

Information to:  Members shall not disclose arrest information or other information to any attorney or legal counsel before trial of subject in such fashion as

## FAMILY VIOLENCE GUIDELINE

### Section 1

It is the guideline of the Roanoke Police Department to respond to and diligently investigate all complaints of family violence and provide protection to all participants of the dispute. Traditional methods of crisis intervention will no longer be utilized.  Standard officer safety tactics will be utilized to minimize danger to the officer as well as others involved in the dispute. The goals of this guideline are:

> To prevent and reduce family homicides.
> To prevent and reduce family assaults.
> To prevent and reduce police call backs.
> To prevent and reduce injuries to officers.
> To prevent and reduce liability risks to the department.

### Section 2

Definitions:

Family Violence:  any incident resulting in the abuse, assault, or the attempt or threats thereof, between, family or household members.  This does not include the reasonable discipline of a child by a person having that authority as prescribed by state law.

Family/Household member includes:

a.   Spouses
b.   Former Spouses
c.   Parents
d.   Children
e.   Any person related by blood
f.   Any person related by marriage
g.   A person with whom the victim has a child in common.
h.   Present or former household member.
i.   The following factors will not be used in determining probable cause.

5

Probable Cause:  Facts and circumstances within the officer's knowledge which are reasonably trustworthy and which would lead a prudent man to believe that the officer does not have to have enough evidence before them to support a conviction.

1.  Martial status of the parties.

2.  The existence of a protective order (except if the violation of such order would constitute a crime).

3.  The disposition of previous police calls involving the same victim and offender.

4.  The victim's unwillingness to prosecute the case.

5.  The police officer's belief that the victim will not prosecute.

6.  Verbal assurances by either party that the violence will stop.

7.  Denial by either party that the violence occurred when there is evidence of domestic violence.

8. The officer's concern about reprisals against the victim by the offender.

9. The race, ethnicity, sexual preference, social class, or occupation of the victim and/or offender.

Domestic Dispute:  any incident between family/household member where, even though no crime has occurred, a Law Enforcement Officer has been called to the scene.

**Section 3**

Dispatchers Procedures:

A.    Dispatchers can obtain vital information that when passed on to responding officers, can reduce the risk of injury or death to the officers. The dispatcher will give family violence calls the same priority as other life threatening calls and dispatch a minimum of two officers.

B.  During the initial call for assistance, the dispatcher will obtain the following information:

1.  The exact location of the emergency (i.e. street name, number, apt. number and cross street or landmark if necessary).

2.  What has happened?

3.  The caller's name and involvement.



EXHIBIT
C

## ARREST WARRANT FOR PROBATIONER

| MUNICPAL COURT OF LAGRANGE | COUNTY OF TROUP |
|---|---|
| VS. | CHARGES 35-1-5 DISORDERLY CONDUCT, 52-0-9 FTA |
| LEWIS, SAMUEL J. | NUMBER 050622661-3 |

TO THE SHERIFF OF THE ABOVE NAMED COUNTY OR OTHERE LAW ENFORCEMENT OFFICER OF THE STATE:

Under authority of the Georgia Statewide Probation Act you are hereby commanded to take the body of

LEWIS, SAMUEL J.

Of the following address

118 KEENER ST, LAGRANGE, GA 30240

And safely keep _____ Him _____ until _____ He _____ may be returned to this Court, there to answer to a charge violation of the following conditions of probation:
THE DEFENDANT FAILED TO REPORT.
THE DEFENDANT FAILED TO PAY FINE AND FEES.
THE DEFENDANT FAILED TO COMPLETE COMMUNITY SERVICE.

Probationer is charged with violation of said conditions, in willful disregard of a Court Order, specifically as follows:
THE DEFENDANT FAILED TO REPORT.
THE DEFENDANT FAILED TO PAY FINE AND FEES.
THE DEFENDANT FAILED TO COMPLETE COMMUNITY SERVICE.

ISSUED THIS _29th_ DAY OF _August 2007_

Sworn to me and subscribed before this _____ 29th _____

Day of _August 2007_

_____
NOTARY PUBLIC (SEAL)

(My Commission Expires August 3, 2009.

_____
PROBATION OFFICER

_____
PRESIDING JUDGE

## TOLLING AFFIDAVIT

This said Defendant has failed to report as directed since _____. All efforts to contact this defendant by the probation officer have proven unsuccessful. The defendant's whereabouts are unknown and is considered absconded. It is Requested that the defendant's probation be tolled and suspended pursuant to 42-8-36 as of the date signed below until the defendant is arrested or is incarcerated

**DAYS REMAINING ON PROBATION**
201.
I swear or affirm that there is documentation in the offender's file to support the above request.

_(signature)_ Billy East
PROBATION OFFICER

REQUESTED  8/29/07
IT IS SO ORDERED _(signature)_ 9/6/07
JUDGE'S SIGNATURE

---

NO. 050622661-3
**ARREST WARRANT**

CITY OF LAGRANGE
vs.

LEWIS, SAMUEL J.

SSN: 420021272
Address:
118 KEENER ST, LAGRANGE, GA 30240

**CHARGED WITH**

**PROBATION VIOLATION**

PROSECUTOR  Billy East
GEORGIA, TROUP COUNTY

Executed the foregoing Warrant by arresting defendant this _____ day of _____

_____
Arresting Officers Signature

---

DESCRIPTION OF SUSPECT
HT:  511        WT: 165
RACE: W         DOB: 10/3/1976
EYE:  BRO    HAIR: BRO
SEX:  M

ALIASES/AKA:

OTHER KNOWN ADDRESS:

PHONE #: 7068841227

EMPLOYED BY: FREDDIE COX PAINT
PHONE #: 7703103279

IS SUSPECT KNOWN TO BE VIOLENT?
YES: ____        NO: ____

IS SUSPECT KNOWN TO USE/POSSESS DRUGS?
YES: ____        NO: ____

VEHICLE DESCRIPTION
YEAR:           MAKE:
MODEL:          COLOR:
TAG#:           STATE:

ATTEMPT TO LOCATE BY
OFFICER'S NAME          DATE / STATUS
_____       _____
_____       _____
_____       _____

ENTERED US/ _(signature)_ 9/12/07



# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

SAMUEL J. LEWIS,                         *
                                         *
     **Plaintiff**                     *
                                         *
                                         *    **Case No.: 3:07-CV-787-WKW(W0)**
                                         *
CHIEF ADAM MELTON,                       *
                                         *
     **Defendants.**                   *


## AFFIDAVIT OF ROANOKE POLICE CAPTAIN DONNIE WAYNE GRANT, SR.


STATE OF ALABAMA          )
COUNTY OF RANDOLPH        )


     Before me, a notary public in and for the Calhoun County, State of Alabama, personally appeared Roanoke Police Captain Donnie Wayne Grant, Sr., who is known to me, and being by me duly sworn, deposes and says:

     I am a Police Captain employed by the City of Roanoke's Police Department. I am over the age of 19 years, and I am competent to make this affidavit, which is based upon my personal knowledge and Roanoke Police Department records.

     Mr. Samuel J. Lewis is a Post Trial Convictee who is currently serving a 210 day Consecutive Sentence in the Roanoke City Jail. Mr. Lewis also has a pending warrant for his arrest in Georgia. Mr. Lewis was not allowed to serve on a work detail outside the Jail. When Mr. Lewis was informed that he was not allowed to go on a work detail, Mr. Lewis told me that if I would allow him to go out and work he would not sue, but if I did not he was going to send a letter to Montgomery and file a law suit. I immediately told Chief Adam Melton what Mr. Samuel Lewis said. Chief Melton told me he was not going to have an inmate blackmail him or the City. He told me to provided Mr. Lewis with the necessary forms to file an action if he so chose. Further, I was told by the Chief to tell Mr. Lewis that he was not going to be allowed to work for two weeks, not because he sued, but because of his attempt to blackmail the City of Roanoke. Mr. Lewis was never denied access to any Court.

Mr. Lewis has not been treated differently from any other inmate, based on all facts leading up to his incarceration, and all facts concerning his incarceration.

FURTHER AFFIANT SAITH NOT.

Captain Donnie Wayne Grant, Sr.

STATE OF ALABAMA )
COUNTY OF CALHOUN )

Before me, a notary public, in and for said county and state, personally appeared Captain Donnie Wayne Grant, Sr., and after being first duly sworn, did state that he has read the above and foregoing, and executed the same of his own free will and under oath.

Sworn to and subscribed this 10 day of October, 2007.

NOTARY PUBLIC
Commission Expires 1/27/2010